**No. 24-3187**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

PAUL RUSSELL,

*Plaintiff-Appellant*,

*v.*

DANIEL DRISCOLL, in his official capacity
as Secretary of the United States Army,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Kansas (No. 22-CV-4035-DDC-TJJ)
The Honorable Daniel D. Crabtree, United States District Court Judge

**BRIEF OF APPELLEE**

DUSTON J. SLINKARD
*Acting United States Attorney*
*District of Kansas*

MICHELLE A. JACOBS
KS. S.CT. # 21261
Assistant United States Attorney
444 SE Quincy, Suite 290
Topeka, KS 66683
Tel: (785) 295-7676
Fax: (785) 295-2853
Email: michelle.jacobs@usdoj.gov
*Attorneys for Appellee*

ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

PRIOR OR RELATED APPEALS.............................................................................. iv

JURISDICTIONAL STATEMENT .........................................................................1

ISSUE PRESENTED ..............................................................................................2

STATEMENT OF THE CASE..................................................................................3

SUMMARY OF ARGUMENT ...............................................................................10

ARGUMENT AND AUTHORITIES......................................................................11

   I.    Standard of Review ....................................................................................11

   II.    District Court correctly concluded that SJ was appropriate .......................12

      A.   Muldrow is not applicable to hostile work environment claim................13

      B.   The District Court did not err in refusing to adopt the investigative report in full...........................................................................................................20

      C.   Russell failed to show he suffered severe or pervasive conduct that altered his working conditions .................................................................23

CONCLUSION ......................................................................................................30

CERTIFICATE OF COMPLIANCE.......................................................................31

CERTIFICATE OF SERVICE ...............................................................................32

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998)................................11

*Al-Kazaz v. Unithern Food Sys., Inc.*, 594 F. App'x 460 (10th Cir. 2014) .............29

*Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238 (10th Cir. 1990) ........................................................................................................................11

*Babb v. Wilkie*, 589 U.S. 399 (2020) ........................................................................19

*Ballou v. University of Kansas Med. Ctr.*, 871 F. Supp. 1384 (D. Kan. 1994) 25, 27

*Barnes v. United States*, 776 F.3d 1134 (10th Cir. 2015).......................................16

*Baum v. Gillman*, 648 F.2d 1292 (10th Cir. 1981) ...................................................11

*Bolden v. PRC Inc.*, 43 F.3d 545 (10th Cir. 1994)........................................... 12, 29

*Bostock v. Clayton  Cnty.*, 590 U.S. 644 (2020) ......................................................13

*Branson v. Price River Coal Co.*, 853 F.2d 768 (10th Cir. 1988) ..........................12

*Brown v. LaFerry's LP Gas Co.,* 708 F. App'x 518 (10th Cir. 2017) ...................29

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)...................................25

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).........................................................11

*Cervantes v. Wal-Mart Stores, Inc*., 1 Fed Appx 762 (10th Cir. 2001)...................22

*Davis v. U.S. Postal Serv.*, 142 F.3d 1334 (10th Cir. 1998)....................................15

*Dike v. Columbia Hospital Corp. of Bay Area*, 2025 WL 315126  (8th Cir. Jan. 28, 2025) ......................................................................................................................16

*EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306 (4th Cir. 2008)................................28

*Est. of Beauford v. Mesa Cty.*, 35 F.4th 1248 (10th Cir. 2022) ..............................11

*Est. of Hurtado v. Smith*, 119 F.4th 1233 (10th Cir. 2024) ....................................12

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)...................................... 18, 28

*Figures v. Board of Public Utilities of Kansas City, Kan.*, 1990 WL 94346 (D. Kan. 1990).................................................................................................................27

*Hansley v. DeJoy*, 2024 WL 4947275 (4th Cir. Dec. 3, 2024)................................17

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) ........................................ 14, 15

*Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092 (10th Cir. 2019) ..............................27

*Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675 (10th Cir. 2007) ................................12

*Hicks v. Gates Rubber Co.*, 833 F. 2d 1406 (10th Cir. 1987)..................................15

*Khalaf v. Ford Motor Co.*, 973 F.3d 469 (6th Cir. 2020)........................................24

*Kisor v. Wilkie*, 588 U.S. 558 (2019).......................................................................16

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173 (10th Cir. 2013) ..............11

*McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887 (6th 2024)...........................17, 18

*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986)................ 14, 18, 21, 26

*Morris v. City of Colo. Springs*, 666 F.3d 654 (10th Cir. 2102) .... 24, 25, 28, 29, 30

ii

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) .............................. 10, 13, 17, 18

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ......................... 14, 15

*Nelson v. DeJoy*, No. 23-1227, 2024 WL 3507723 (10th Cir. July 23, 2024) ........19

*Phannenstiel v. Kansas*, 2024 WL 3534142 (10th Cir. July 25, 2024) ...................24

*Pierce v. McDonogh*, 2023 WL 12006873 (E.D. Okla. March 6, 2023).................21

*Pigeon v. City of Okla. City*, 2022 WL 17660539 (10th Cir. Dec. 14, 2022) ..........12

*Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006) ........................................11

*Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408 (10th Cir. 1997)......................29

*Tademy v. Union Pac. Corp.,* 614 F.3d 1132 (10th Cir. 2008) ..............................29

*Throupe v. University of Denver*, 988 F. 3d 1243 (10th Cir. 2021) ................ 23, 24

*United States v. Maloid*, 71 F.4th 795 (10th Cir. 2023) ..........................................16

*Watson v. FedEx Express*, 2024 WL 340817 (5th Cir. Jan. 30, 2024)...................21

*Young v. Colo. Dep't of Corr.*, 94 F.4th 1242 (10th Cir. 2024) .............................12

*Zuniga v. City of Dallas*, 2024 WL 2734956 n. 3 (N.D. Tex. May 28, 2024) ........16

## **Statutes**

28 U.S.C. § 633a(a) ................................................................................................19

28 U.S.C. § 1291 ......................................................................................................1

42 U.S.C. 2000e-2(a)(1)................................................................................. 13, 19

42 U.S.C. § 2000e-2 ...............................................................................................19

42 U.S.C. § 2000e-16 .............................................................................................19

42 U.S.C. § 2000e-16(a) ........................................................................................19

## PRIOR OR RELATED APPEALS

Defendant-Appellee is not aware of any prior or related appeals.

## JURISDICTIONAL STATEMENT

This is an appeal from Plaintiff-Appellant Paul Russell's Title VII federal-sector employment discrimination claim against Defendant-Appellee Secretary Driscoll in his capacity as the Secretary of the Army. Secretary Driscoll moved to dismiss for failure to exhaust administrative remedies and failure to state a claim upon which relief may be granted. (App. Vol. I at 2, Doc. 14, 15). The district court granted Secretary Driscoll's motion in part and denied it in part on June 30, 2023. (App. Vol. I at 4, Doc. 27). Secretary Driscoll moved for summary judgment at the close of discovery. (App. Vol. I at 38-78). The district court granted Secretary Driscoll's motion for summary judgment on November 7, 2024. (Supp. App. Vol. I; Doc. 66).[1] Russell timely filed his notice of appeal on December 5, 2024. (App. Vol. I at 10, Doc. 68); *see also* Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction over this appeal under 28 U.S.C. § 1291.

---

[1] Appellant did not include the Order on summary judgment (Doc. 66) in his appendix but attached it to the opening appeal brief. See Fed. R. App. Proc. 28.2. Pursuant to Fed. R. App. Proc. 30.2, contemporaneous with filing the Appellee's brief, Appellee files a supplemental appendix that includes the order. Because the only document included in the supplement is the Order, the page numbers in this brief correspond with the page numbers on the Order.

## ISSUE PRESENTED

Whether the District Court erred in granting Secretary Driscoll summary judgment on Russell's hostile work environment claim.

## STATEMENT OF THE CASE

### A. Procedural History

Russell filed a Complaint against the Secretary of the Army under Title VII, alleging discriminatory and unlawful employment practices; specifically, discrete claims of discrimination and a claim for hostile work environment based on sex. (App. Vol. I at 9-18). The discrete claims were dismissed, leaving only the hostile work environment claim. (App. Vol. I at 4).

At the close of discovery, Driscoll moved for summary judgment on the Title VII hostile work environment claim. (App. Vol. I at 38-79). The district court granted Driscoll's motion for summary judgment and entered judgment on the same day. (Supp. App. Vol. I; App. Vol. I at 7 (docket)). This appeal follows.

### B. Factual background

Paul Russell began working at the Irvine Community Hospital in November 2010. (App. Vol. I at 81). In May 2017, he was temporarily promoted to Chief of Logistics. (App. Vol. I at 81-82, 174). Although his replacement, MAJ Tran, arrived on base in August 2018, Russell remained in his temporary role until November 2018, when MAJ Tran officially assumed the Chief of Logistics title and Russell returned to his role as the Medical Logistics Readiness Manager. (App. Vol. I at 84, 86-87, 175-176; App. Vol. II at 194).

MAJ Tran did not ask questions of Russell during the transition period. (App. Vol. I at 130). Russell did not understand why there was a lack of communication from MAJ Tran during the transition. (App. Vol. I at 130-31, 133). Russell admitted that he did not have a lot of information to give to MAJ Tran. (App. Vol. I at 84-85; App. Vol. II at 177). MAJ Tran would request information from Russell and include COL Sexton, the Deputy Commander for Administration on the communication. (App. Vol. I at 131). As a specific example, Russell identified an email in which Russell sent MAJ Tran information, and when MAJ Tran responded she included COL Sexton on her response. (App. Vol. I at 132-33; App. Vol. II at 177-78).

In November 2018, MAJ Tran conducted numerous meetings with different groups within the logistics division. (App. Vol. I at 107-08). One meeting was conducted with only female staff, and another meeting was conducted with only male staff. (App. Vol. I at 111). It was not a common practice to segregate staff by males and females. (App. Vol. I at 114). In the meetings, MAJ Tran encouraged the participants to read leadership books, specifically "Lean In: Women, Work, and the Will to Lead," and a leadership book written by GEN Colin Powell. (App. Vol. II at 195). MAJ Tran held another meeting with supervisors, which her two female direct reports, who were not supervisors, also attended. (App. Vol. I at 109, 116). In the supervisor meeting, MAJ Tran presented her leadership philosophy. (App. Vol. I at 108). In this meeting she also expressed her surprise that there were no females in

leadership roles. (App. Vol. I at 108). Russell believed that MAJ Tran's discussion of the lack of females in leadership was "alluding to acts of people avoiding having people in charge – having females in charge." (App. Vol. I at 110). Russell told COL Sexton that he thought the meetings were inappropriate. (App. Vol. II at 195).

Russell spoke with COL Sexton about the lack of communication between himself and MAJ Tran in November 2018. (App. Vol. I at 146-47). On an unknown date, Russell told COL Sexton that the different meetings and the lack of communication was counterproductive. (App. Vol. I at 147-48). Russell did not allege that MAJ Tran's conduct was harassing or discriminatory; rather, he alleged it was counterproductive. (App. Vol. I at 152-53).

Russell observed female employees meet with MAJ Tran in her office without making an appointment. (App. Vol. I at 115). Russell specifically identified MAJ Tran's direct reports as the females who did not have to make an appointment to meet with her. (App. Vol. I at 116). Russell believed that he was required to schedule a meeting with MAJ Tran if he wanted to speak with her, but Russell also admitted that he had previously scheduled meetings with MAJ Tran. (App. Vol. I at 115-16). Russell identified two or three occasions in which he stopped by MAJ Tran's office, and she asked him to schedule a meeting. (App. Vol. I at 118-19). Russell was put off by MAJ Tran's request. (App. Vol. I at 119-20). Russell also identified a few

occasions in which MAJ Tran started a conversation with him from her office and he walked to her office and completed the conversation. (App. Vol. I at 117-18).

Plaintiff heard through third parties that MAJ Tran made comments at meetings about previous management decisions, including hiring decisions. (App. Vol. I at 120-21). COL Sexton counseled MAJ Tran to make complaints in private. (App. Vol. II at 195). Plaintiff alleges that MAJ Tran's comments on his decisions when he was Chief intimidated him, ridiculed him, and were professionally insulting. (App. Vol. I at 136-37).

After the transition, MAJ Tran requested that Russell update his title from "Chief, Readiness Manager" to "Readiness Manager." (App. Vol. I at 94; App. Vol. II at 182). Plaintiff believed that his correct title was "Chief, Readiness Manager." (App. Vol. I at 94). However, MAJ Tran's request is consistent with the logistics division personnel roster, the logistics division employee list, Russell's position description, and the organizational chart. (App. Vol. I at 96-97, 99-100, 102; App. Vol. II at 179-85, 196). Plaintiff believed that MAJ Tran was attempting to undermine him by asking him to remove "Chief" from his title. (App. Vol. I at 101).

In December 2018 MAJ Tran received a telephone call from a garage door company regarding an overdue bill. (App. Vol. I at 124; App. Vol. II at 192-93). Major Tran emailed Russell and other individuals in the department, asking Russell to close out the bill since it was incurred while he was Chief. (App. Vol. I at 125-26;

6

App. Vol. II at 192-93). Russell responded to explain that it was a personal bill, not work-related. (App. Vol. I at 124, 126; App. Vol. II at 192-93). MAJ Tran responded, "Awesome. The lady on the phone did not differentiate." (App. Vol. I at 126; App. Vol. II at 192-93). Russell was upset that the email included so many people. (App. Vol. I at 127).

In March 2019 MAJ Tran sent an email to the Resource Management Division, requesting that Russell be removed from leadership emails. (App. Vol. I at 104; App. Vol. II at 27). MAJ Tran explained that Russel was the Readiness Manager and not a Deputy. (App. Vol. II at 200). This was different than how the department had operated in the past, as Russell had always been a part of the leadership emails. (App. Vol. I at 104-06). Russell admitted that MAJ Tran had discretion to decide who would or would not be included on leadership emails. (App. Vol. I at 105).

MAJ Tran suggested to COL Sexton that Silvia Duran take over as Interim Chief while she was on maternity leave because Duran had leadership experience in the United States Army Reserves. (App. Vol. I at 127-28; App. Vol. II at 197). Duran was the same grade as Russell, but she was a bargaining unit employee and was not eligible to fill the interim position. (App. Vol. I at 129). MAJ Tran worked with COL Sexton to identify someone to fill-in, and MAJ Tran selected a male for the position. (App. Vol. II at 197). Russell believed his position description specified that he serve as the Deputy Chief in the absence of the Chief. (App. Vol. I at 129). Russell

7

expressed to COL Sexton his concerns that MAJ Tran's actions could be seen as biased against male supervisors. (App. Vol. II at 197). Russell acknowledged that MAJ Tran was not absent, she was taking leave. (App. Vol. I at 129).

COL Sexton conducted professional development counseling with MAJ Tran related to conducting meetings with separate genders in November 2018. (App. Vol. II at 195, 205). COL Sexton also notified EEO. (App. Vol. II at 22, 32). In early 2019, the EEO office conducted a sensing session. (App. Vol. II at 195, 205). During the sensing session, each employee of the Logistics Division participated in an individual private interview. (App. Vol. II at 198, 205). Russell identified his concerns as the separate meetings held by MAJ Tran, the different book recommendations, non-supervisors in supervisory meetings, and general communication challenges. (App. Vol. I at 155-56). The general communication challenges Russell identified were not his own challenges but were related to other employees. (App. Vol. I at 156). When asked if he made allegations during the sensing session about whether MAJ Tran discriminated against him or harassed him, Plaintiff stated that he spoke openly about "those issues noted of the meetings, lack of communication, the books, and things that – and how it impacted my ability to function day-to-day." (App. Vol. I at 157-58). However, Plaintiff did not identify how it impeded his ability to do his job. Plaintiff did not state that he alleged that MAJ Tran harassed or discriminated against him. (App. Vol. I at 157-58).

The EEO sensing session identified internal complaints against both MAJ Tran and Russell. (App. Vol. II at 198, 205-06; App. Vol. I at 164). Following the sensing session, COL Sexton ordered an AR 15-6 (Army Regulation Section 15-6) investigation into the allegations of misconduct by Russell and MAJ Tran. (App. Vol. I at 158-59; App. Vol. II at 198, 33). Both Russell and MAJ Tran were detailed out of the Logistics Division for the pendency of the investigation. (App. Vol. I at 158-59; App. Vol. III at 431-433). Russell was moved to Quality and Safety and performed different duties. (App. Vol. I at 160; App. Vol. III at 431). The temporary detail did not affect Russell's pay, benefits, or compensation. (App. Vol. I at 160). Following the completion of the AR 15-6 investigation Russell was returned to his position as Readiness Manager in the Logistics Division on October 1, 2019. (App. Vol. I at 161). Plaintiff worked under the same position description when he was reassigned back to the Logistics Division. (App. Vol. I at 92-93).

## SUMMARY OF ARGUMENT

The district court did not err in granting summary judgment on Russell's Title VII hostile work environment claim. The Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), is not applicable to hostile work environment claims because the "some harm" test is significantly different than the high standard necessary to show a severe or pervasive work environment. The district court did not err in adopting, with limitations, the findings of the AR 15-6 investigation, Russell's sole evidence in contravention of summary judgment. Construing the facts in the light most favorable to Russell, there is no genuine dispute of fact that Russell did not suffer from a severe or pervasive work environment that altered the conditions of his employment. Accordingly, this Court should affirm the district court's grant of summary judgment on Russell's hostile work environment claim.

## ARGUMENT AND AUTHORITIES

## I.    Standard of Review

This Court reviews the grant of summary judgment de novo applying the same standards as the district court. *Est. of Beauford v. Mesa Cty.*, 35 F.4th 1248, 1261 (10th Cir. 2022). The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material "if under the substantive law it is essential to proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). In conducting this review, the court views the factual record "in the light most favorable to the [nonmovant]." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The court need not "make unreasonable inferences in favor of the non-moving party," or "adopt one party's version of the facts if the record doesn't support it." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1187 (10th Cir. 2013).

The nonmoving party cannot carry his or her burden by resting on the allegations contained in the Complaint. *Baum v. Gillman*, 648 F.2d 1292, 1297 (10th

Cir. 1981). Instead, a party must produce "*specific* facts showing that there remains a genuine issue for trial." *Pigeon v. City of Okla. City*, No. 22-6033, 2022 WL 17660539, at \*5 (10th Cir. Dec. 14, 2022) (citing *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir. 1988)). Thus, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Est. of Hurtado v. Smith*, 119 F.4th 1233, 1236 (10th Cir. 2024) (citation omitted).

## II.    The District Court correctly concluded that summary judgment was appropriate

To state a Title VII hostile work environment claim, a plaintiff must point to evidence from which a jury could find that (1) his workplace was "permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (2) he was "targeted for harassment" based on his sex or other protected characteristics. *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). To show "severe or pervasive" discriminatory intimidation, ridicule, and insult, this Court considers the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it interferes with an employee's work performance. *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024). A plaintiff must show more than "a few isolated incidents" of unwelcome harassment. *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).

### A.  *Muldrow* does not change the well-established test for hostile work environment claims

Russell argues that the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), applies to his hostile work environment claim. In *Muldrow*, the plaintiff brought a discrete sex discrimination claim based on her transfer within the police department, a transfer that changed her hours, her uniform, her visibility, and the use of a company-issued vehicle. *Id.* at 351. The Court noted that the plaintiff had to show that she was discriminated against, meaning that she was treated differently, and that the treatment injured her. *Id.* at 354 (citing *Bostock v. Clayton Cnty.*, 590 U.S. 644, 681 (2020)). Additionally, plaintiff must show that the "'worse' treatment must pertain to . . . employment 'terms or conditions.'" *Id.* (citing 42 U.S.C. 2000e-2(a)(1)). The Court reasoned that "a transferee must show some harm respecting an identifiable term or condition of employment. What the transferee does not have to show, according to the relevant text, is that the harm incurred was 'significant.'" *Id.* at 355.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensations, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). The plaintiff in *Muldrow* advanced a discrete discrimination claim under Title VII. A discrete act of employment discrimination constitutes a separate actionable

13

"unlawful employment practice," and each discrete act of employment discrimination is a separate claim. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). A discrete employment discrimination claim is typically easy to identify, such as termination, failure to promote, denial of a transfer, or refusal to hire. *Id.*

A hostile work environment claim is substantially different. *Id.* at 115. A hostile work environment claim is made up of a series of separate acts or repeated conduct that collectively are so severe and pervasive that together they constitute one "unlawful employment practice." *Id.* at 117. In contrast to "discrete acts, a single act of harassment may not be actionable on its own." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). In a hostile work environment claim, the plaintiff must show, based on the series of acts, a workplace permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

At summary judgment, a hostile work environment analysis must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. These considerations differentiate the "some

harm" test identified in *Muldrow* with the high standard set for hostile work environment claims, which requires proof of a discriminatory work environment. *See Hicks v. Gates Rubber Co.*, 833 F. 2d 1406, 1415 (10th Cir. 1987). Additionally, plaintiff must show that the environment was both objectively and subjectively hostile or abusive. *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998). If the conduct does not alter the conditions of the plaintiff's employment, there is no Title VII violation. *Harris*, 510 U.S. at 21-22. Clearly, the requirement for severe or pervasive conduct that results in an altered work environment is substantially different than the "some harm" test established in *Muldrow* for discrete claims of discrimination.

*Muldrow* did not abrogate these longstanding Supreme Court and Tenth Circuit precedents establishing the standard for Title VII hostile work environment claims. As discussed, hostile work environment claims like Russell's are materially different than discriminatory treatment claims like the transfer-claim at issue in *Muldrow*. *See Morgan*, 536 U.S. at 115, 117 ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." "[t]he entire hostile work environment encompasses a single unlawful employment practice…"). And because *Muldrow* did not address hostile work environment claims at all, this Court must continue to follow the directly controlling Supreme Court precedents that do address Title VII hostile work environment claims. *See*

15

*United States v. Maloid*, 71 F.4th 795, 808-809 (10th Cir. 2023) (*Kisor v. Wilkie*, 588 U.S. 558 (2019), did not alter Supreme Court precedent regarding the deference owed to commentary in the United States Sentencing Guidelines in part because *Kisor* "said nothing about" the sentencing context). For the same reason, *Muldrow* did not indisputably and pellucidly abrogate this Court's hostile work environment precedents. *See Barnes v. United States*, 776 F.3d 1134, 1147 (10th Cir. 2015).

Three circuits have considered whether *Muldrow's* "some harm" test applies to hostile work environment. The Eighth Circuit, in response to a plaintiff's suggestion that *Muldrow* changed the severe-or-pervasive test for hostile work environment, noted that the "Supreme Court has defined the requirements of a hostile work environment claim over the course of many years, making clear the high bar that plaintiffs must meet to make out this claim. There is no suggestion in *Muldrow* that the Supreme Court intended to alter these requirements." *Dike v. Columbia Hospital Corp. of Bay Area*, 2025 WL 315126, at *5, n. 25 (8th Cir. Jan. 28, 2025) (unpublished) (citing *Zuniga v. City of Dallas*, 2024 WL 2734956, at *3 n. 3 (N.D. Tex. May 28, 2024)).

The Fourth Circuit noted the difference in the standards for disparate treatment claims and hostile work environment claims in that hostile work environment claims require a finding of severe or pervasive conduct, whereas disparate treatment need only affect "an identifiable term or condition of

16

employment." *Hansley v. DeJoy*, 2024 WL 4947275, at *2 (4th Cir. Dec. 3, 2024) (unpublished). The Fourth Circuit rejected the suggestion that *Muldrow* applies to hostile work environment claims.

The Sixth Circuit, in an opinion that interlaced the analysis of discrete claims and hostile work environment claims, determined that *Muldrow* applied to hostile work environment. *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887 (6th 2024). The court acknowledged that under *Muldrow*, for a discrete act, a plaintiff need only show "some harm respecting an identifiable term or condition of employment." *Id.* (citing *Muldrow*, 601 U.S. at 355). In analyzing the severe-and-pervasive prong of the hostile work environment claim, the court held that, "[B]ecause hostile work environment claims arise out of the same statutory language as disparate-treatment claims, *Muldrow's* holding that Title VII does not require plaintiff to show 'significant' harm applies to both sets of claims." *Id.* at 904. The court held that the "severe and pervasive" analysis continued to apply in hostile work environment claims, but then found that the test was whether the work environment produced "some harm respecting an identifiable term or condition of employment," or "whether it left an employee 'worse off respecting employment terms or conditions.'" *Id.* (citing *Muldrow*, 601 US at 355). However, the court then abandoned the "some harm" test and reiterated that hostile work environment claims measured the "frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 755, 787-88 (1998)). Instead of considering whether the plaintiff was "worse off" in respect to his work conditions, as *Muldrow* requires, the court found that a jury could conclude that the plaintiff's conditions of employment were altered, and the grant of summary judgment was reversed. *Id.* at 905-06.

The Sixth Circuit in *McNeal* altered, or at least attempted to alter, the well-established test set forth by the Supreme Court for hostile work environment claims. The Court attempted to apply the "some harm" test of a disparate treatment claim to a hostile work environment claim, inserting the language from *Muldrow* that an employee need only show "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 355. This is inconsistent with the test for a hostile work environment claim, in which the plaintiff must show that the conduct was "severe or pervasive" and that it altered the plaintiff's work condition. *Meritor Savings Bank, FSB*, 477 U.S. at 67.

The Eighth Circuit and the Fourth Circuit correctly noted the difference in standards for discrete claims and hostile work environment claims, finding that *Muldrow* does not apply to or alter the standard for hostile work environment. In this case, the District Court correctly found that *Muldrow* did not apply to a hostile work

18

environment claim. (Supp. App. Vol. I at 17) ("That is, just as the *Muldrow* Court explicitly refused to extend its lenient standard to the retaliation context because of "reasons peculiar" to that context, reasons peculiar to agency principles likely counsel against extending *Muldrow's* standard to the hostile work environment context at issue here."). The district court noted, as set forth above, that *Muldrow* does not displace the well-established test developed by the Supreme Court for hostile work environment claims. And Russell provides this Court no basis to alter the test. *Muldrow* does not apply to or alter the standard for hostile work environment claims.[2]

---

[2] In addition, *Muldrow* involved a claim under Title VII's private-sector anti-discrimination provision, 42 U.S.C. § 2000e-2. This case, however, arises under the federal sector provision of Title VII, found at 42 U.S.C. § 2000e-16, which contains materially different statutory language. *Compare* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . .") *with* 42 U.S.C. § 2000e-16(a) ("All personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on race . . . ."); *see Babb v. Wilkie*, 589 U.S. 399 (2020) (recognizing the different statutory text contained in the private sector and federal sector provisions of the Age Discrimination in Employment Act (ADEA) and the different interpretation of the two prohibitions). *Babb* is relevant here because the ADEA federal-sector prohibition on discrimination, 28 U.S.C. § 633a(a), mirrors the Title VII federal sector provision, 42 U.S.C. § 2000e-2(a)(1). This Court has noted but declined to resolve *Babb*'s potential effect on Title VII's federal-sector provision. *Nelson v. DeJoy*, No. 23-1227, 2024 WL 3507723, at *4, n.2 (10th Cir. July 23, 2024). This Court need not resolve that issue in this case either. Suffice it to say that *Muldrow* has no purchase in this context.

**B.**     **The District Court did not err in refusing to adopt the investigative report in full**

Russell argues that the district court erred in refusing to adopt in full the AR 15-6 investigative report in deciding summary judgment. Russell appears to argue that the district court did not consider all of the evidence in the light most favorable to plaintiff. However, the district court clearly considered all relevant evidence, screened out irrelevant sections of the AR 15-6, and then explained why the remainder did not create a genuine dispute of material fact. Specifically, the court noted the AR 15-6 investigation did not address the "severity or pervasiveness of a hostile work environment – an analysis required by the governing law." (Supp. App. Vol I at 37, n. 9). The court also noted the AR 15-6 does not determine whether Russell satisfied the elements of a hostile work environment under federal law, so the court cannot adopt the investigation in whole. (Supp. App. Vol. I at 37, n. 9).

Russell's *sole* reliance on the internal investigation to overcome summary judgment is problematic. For example, Russell states that the AR 15-6 investigation showed that males received lower performance ratings than females. (Appellant's Brief, p. 14). Russell then states that performance ratings directly influence performance incentives and promotions. *Id.* However, Russell testified that he did not receive a performance rating from MAJ Tran. (App. Vol. I at 151).

Russell points out that the AR 15-6 investigation found that MAJ Tran discriminated against him due to his sex when MAJ Tran alleged Russell was

20

"incompetent" and "failing in performance." (App. Vol. IV at 480). This statement misstates the report. The findings noted that MAJ Tran stated that the branch chiefs were failing in their performance. (App. Vol. IV at 506). However, Russell is not a branch chief. (App. Vol. I at 96-97). Russell alleged that MAJ Tran called him "incompetent" in staff meetings and that he made poor staffing decisions. (App. Vol. IV at 480). The report did not make any specific findings that MAJ Tran called Russell "incompetent" or that she made any specific comments about Russell's staffing decisions. Instead, the findings state that MAJ Tran spoke negatively about her subordinate supervisors. (App. Vol. IV at 505).

Russell attempts to equate a "toxic environment" with a hostile work environment but does not provide any factual or legal support for such a conclusion. "Simply describing the general atmosphere" of the work environment "as toxic is insufficient to demonstrate how Plaintiff . . . suffered discrimination that altered the terms and conditions of her employment and that her sex was a motivating factor in that discrimination." *Pierce v. McDonogh*, 2023 WL 12006873 at *6 (E.D. Okla. March 6, 2023); *Watson v. FedEx Express*, 2024 WL 340817 at *3 (5th Cir. Jan. 30, 2024) (plaintiff failed to link factual allegations to the allegation of a toxic environment). The test for a hostile work environment requires severe and pervasive discrimination that alters the complainant's work performance. *Meritor Savings Bank, FSB*, 477 U.S. at 67. The purpose of the AR 15-6 investigation is to review

21

employee actions and determine whether the employee acted according to Army regulations.[3]  An AR 15-6 investigation may be helpful to a court if the undisputed facts and the investigator's findings are the same, but the investigation findings are not synonymous with the analysis under hostile work environment, and the district court was not wrong in declining to adopt the findings in whole and parallel the findings to a severe and pervasive hostile work environment.

The district court did not err in declining to accept the AR 15-6 report in its entirety. If it had accepted the report, it also would have had to accept the EEO report and findings, which found Russell was not subjected to a hostile work environment. (App. Vol. I at 30-31). The AR 15-6 investigation is an internal procedure that examined whether Russell and MAJ Tran violated Army regulations, specifically the Army's Equal Opportunity Policy. (App. Vol. IV at 509).  In contrast, the EEO investigation is an internal procedure that examined whether Russell was subjected to a violation of Title VII. Both procedures are internal investigations, and the court has discretion to determine whether administrative reports and findings have probative value. *Cervantes v. Wal-Mart Stores, Inc*., 1 Fed Appx 762, 765 (10th Cir. 2001). The District Court correctly analyzed the facts from the report and the parties' undisputed facts under the legal framework for hostile work environment.

---

[3] See https://home.army.mil/riley/5515/1630/6429/15-6InvestigationOfficer.pdf, last reviewed May 29, 2025.

**C.    Russell failed to show a genuine issue of material fact regarding whether he suffered severe or pervasive conduct that altered his working conditions**

The District Court did not err in granting summary judgment on the hostile work environment claim. Russell argues the district court erred in not applying *Muldrow* and erred by not providing reasonable inferences from the record. Beyond these two arguments, Russell does not argue that the district otherwise erred in finding that the harassment was not sufficiently severe or pervasive to support a hostile work environment claim. In an abundance of caution, this argument is addressed here.

Construing all the facts in Russell's favor, the court concluded that five of the nine allegations could be considered facially biased, therefore a jury could find that the actions of MAJ Tran were discriminatory against plaintiff on the basis of sex and supported a finding of gender animus. (Supp. App. Vol I at 37). But as part of the prima facie case, Russell has the burden to show discrimination that was sufficiently severe or pervasive that it altered the terms or conditions of his employment and created an abusive working environment. *Throupe v. University of Denver*, 988 F. 3d 1243, 1251 (10th Cir. 2021). In this case, Russell was unable to meet this threshold. He identified unfavorable treatment, perceived slights, exclusion in decisions made in a hierarchical structure, and offensive utterances, all which failed to show severity. (Supp. App. Vol. I at 41-43). Similarly, the undisputed facts failed

to establish that MAJ Tran's conduct was pervasive as opposed to isolated, disparaging, and offensive. (Supp. App. Vol. I at 45-47). Nor do the facts establish that the alleged harassment was sufficiently severe or pervasive to alter a term or condition of employment. *Throupe*, 988 F.3d at 1251. Specifically, the Court found that the actions of MAJ Tran were neither physically threatening or humiliating. (Supp. App. Vol. I at 41).

The undisputed facts did not establish an environment that is both objectively and subjectively hostile or abusive. *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2102). A court must evaluate the totality of the circumstances and "consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Throupe*, 988 F.3d at 1252. MAJ Tran's conduct does not satisfy the high bar for hostile work environment claims. *See Phannenstiel v. Kansas*, 2024 WL 3534142 at *4 (10th Cir. July 25, 2024) (unpublished) citing *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 485 (6th Cir. 2020) ("Alleged harassment in the context of a hostile work environment claim must be sufficiently 'pervasive' or 'severe' to alter the conditions of employment. This standard sets a high bar for plaintiffs in order to distinguish meaningful instances of discrimination from instances of simple disrespect.").

Title VII does not establish a general civility code for the workplace, *Morris*, 666 F.3d at 663-64, it also does not set guidelines that supervisors must follow in managing employees. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 64 68 (2006). In this respect, unpopular management decisions or management decisions made by inexperienced supervisors does not necessarily rise to the level of severe or pervasive conduct. *Ballou v. University of Kansas Med. Ctr.*, 871 F. Supp. 1384, 1390 (D. Kan. 1994).

Russell's complaints are summarized as follows: Russell believed MAJ Tran's actions were intended to undermine him, (App. Vol. I at 101); MAJ Tran's actions were a change in procedure, (App. Vol. I at 104-06); he was shocked by MAJ Tran's comment on the lack of female leadership in the division, (App. Vol. I at 115); he was put off by MAJ Tran when he had to schedule a meeting, (App. Vol. I at 122); MAJ Tran could have addressed an issue face-to-face instead of through an email chain with other people, (App. Vol. I at 130); he believed he should have been the Acting Chief while MAJ Tran was on maternity leave, (App. Vol. I at 132); and MAJ Tran did not communicate with him through the transition period (App. Vol. I at 136). However, for each of the complained of events, and in discussing his work environment in general, Russell admits that he did not suffer any adverse or negative employment actions as a result. (App. Vol. I at 106, 109, 114, 123, 130, 133).

Russell testified that the actions of MAJ Tran were personally harming and perhaps unprofessional. (App. Vol. I at 136-37). However, beyond Russell's testimony that he subjectively found MAJ Tran's comments in meetings about previous management harmful and unprofessional, the undisputed facts do not show the comments were harmful to his job. He did not lose his position, have job duties or tasks removed, and did not lose out on a promotion or any other opportunity. It is standard in the workplace that new management typically changes procedures and decisions implemented by the previous management. There is insufficient evidence to conclude that it objectively altered the terms and conditions of Russell's employment. "[N]ot all workplace conduct that may be described as harassment affects a term, condition, or privilege of employment within the meaning of Title VII." *Meritor*, 477 U.S. at 67. MAJ Tran's actions of identifying perceived gender discrepancies in the workplace and changing office protocol, viewed objectively, did not alter the terms and conditions of Russell's employment. Nor were these events threatening or severe.

Russell perceived MAJ Tran's comments as intimidating and insulting because it questioned his decisions. (App. Vol. I at 137). However, Russell's perception is insufficient. Established case law requires the district court to reject a plaintiff's subjective beliefs when the beliefs are not supported by contemporaneous, admissible, and independent evidence of discriminatory conduct directed at the

26

plaintiff. *See Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019) (holding that summary judgment "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."). MAJ Tran's isolated disparaging comment about prior leaderships is insufficient to show intimidating behavior.

Russell complains about MAJ Tran's management decisions in removing him from a leadership emails, MAJ Tran's inclusion of additional people in an email chain, and the lack of communication from MAJ Tran during the transition. However, Russell did not allege, nor do the undisputed facts show, that MAJ Tran's comments or lack of communication subjected him to a negative or disadvantageous employment action. These types of employee management decisions are not subject to Title VII relief. *Ballou*, 871 F. Supp. at 1390 (misguided or poor management decision cannot be characterized as gender-based without evidence); *Figures v. Board of Public Utilities of Kansas City, Kan.*, 1990 WL 94346 at *5 (D. Kan. 1990) (the court will not infer discriminatory animus of management decisions). MAJ Tran's comments about women in leadership and comments about former leadership were sporadic and isolated events that occurred at different times and do not rise to the level of a workplace permeated with discriminatory intimidation, ridicule, or insult.

27

Instead, Russell has identified management decisions that he does not agree with or were executed poorly. However, run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim. *Faragher*, 524 U.S. at 788. "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life." *Morris,* 666 F.3d at 664, citing *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).

Russell believed that MAJ Tran's actions were a change from the way things had been done while he was the temporary Chief or even before he became Chief, but Russell did not allege, nor do the undisputed facts show, that MAJ Tran's actions were in violation of policy or standards. Considering the facts in favor of Russell, MAJ Tran's separate meetings, recommendation of leadership books, and request that employees schedule meetings, were not pervasive management decisions. At most, as Russell testified, MAJ Tran's conduct and decisions were counterproductive. (App. Vol. I at 147, 148, 152, 153, 171-173). However, counterproductive management decisions did not result in an abusive work environment or alter his work conditions. (App. Vol. I at 106, 109, 114, 123, 130, 133).

28

A plaintiff can establish that harassment altered the terms and conditions of employment by showing the pervasiveness of the harassment or the severity of the harassment. *Tademy v. Union Pac. Corp.,* 614 F.3d 1132, 1143 (10th Cir. 2008). The pervasive inquiry requires a factfinder to consider the number of times harassment and discriminatory conduct occurred, considering the environment where it occurred and the sequence and time. *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1415 (10th Cir. 1997). When a plaintiff alleges a few isolated instances of harassment, as Russell has done here, courts have found failure to satisfy the pervasiveness inquiry. *See Brown v. LaFerry's LP Gas Co.,* 708 F. App'x 518, 521 (10th Cir. 2017) (three racially charged comments in six months insufficient); *Bolden*, 43 F.3d at 551 (two racial remarks by two separate employees insufficient); *Al-Kazaz v. Unithern Food Sys., Inc.* 594 F. App'x 460, 463 (10th Cir. 2014) (three racial comments made in a two-month period insufficient).

The harassment was not severe. There was no tortious conduct or physical contact. *See Morris*, 666 F.3d at 658-59 (holding harassment was not severe despite three separate tortious incidents). Nor was MAJ Tran's behavior physically threatening or humiliating. *See id.* at 666-68. The alleged harassment in this case, which includes management decisions for the entire division, an email that included other employees, a change in the leadership structure, and a request to schedule meetings, did not involve physical invasive conduct or unwanted contact, and falls

29

short of severe harassment. Under these facts, an objective person would not find the harassment severe.

There was no persistent or routine harassing conduct. Instead, Russell points to isolated events and perceived slights. The conduct complained of by Russell does not meet the high threshold of severity or pervasiveness required to establish a hostile work environment. *Id* at 666-669 (considering the allegations, plaintiff does not make a sufficient showing of pervasive or severe hostile work environment, the actions were isolated events and were not physically threatening).

Russell's claim of a sex-based hostile work environment does not rise to the level required to establish severe or pervasive harassment as a matter of law. Even assuming the events identified by Russell were subjectively upsetting, he cannot establish that such actions constituted an objectively hostile work environment. The district court's determination that Russell's hostile work environment claim fails as a matter of law should be affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 6,951 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), as calculated by the word-counting function of Microsoft Word for Microsoft 365.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman, using Microsoft Word for Microsoft 365.


Date: June 9, 2025                                  */s/ Michelle A. Jacobs*_____
                                                   Michelle A. Jacobs

## CERTIFICATE OF SERVICE

I certify that on June 9, 2025, the foregoing was electronically filed with the Clerk of the Tenth Circuit Court of Appeals using the Court's CM/ECF system, which will provide notice to Appellant, Paul Russell, by serving his attorney, Peter Rombold, at rombold@hooverlawfirm.com.


Date: June 9, 2025                    */s/ Michelle A. Jacobs*
                                     Michelle A. Jacobs